FEBRUARY TERM, 1869.     245

Van Horn and another vs. Richardson and another.

## Van Horn and another vs. Richardson and another.

*Contract of sale construed.*

A contract to sell the bargainee all the bargainor's interest in "*the property known as the mill property*, now owned and occupied as common and undivided by said parties," *held* to cover all the bargainor's interest in the lands on which the mill stood, or adjacent thereto, and necessary for its use, and actually used with it, although a portion thereof was owned by the bargainor *in severalty*.

APPEAL from the Circuit Court for *Dane* County.

Ejectment. On the 27th of February, 1850, a certain property in the village of Clinton, town of Christiana, in said county, commonly known as "The Mill Property," consisted of certain land indicated on the plat of said village as a reservation for hydraulic purposes, together with a portion of two lots numbered 1 and 2 in block 74 in said village, which were occupied by a saw and grist-mill, and by a dam and flume appurtenant to said mill. It appears that this mill property belonged to *Van Horn* and *Richardson*, but *Van Horn* held title in severalty to said lots 1 and 2. On the day above mentioned, *Van Horn* and *Richardson* entered into a contract under seal, as follows: "Said *Richardson* agrees to sell to said *Van Horn*, or his assigns, all his interest in the property known as the mill property in Christiana, now owned and occupied as common and undivided by the said parties, for the sum of $1,600, to be paid as follows: [here follows a statement of the terms of payment and mode of securing the same]. The said *Van Horn*, or his assigns, is to assume and pay all the joint-debts against said parties growing out of the said mill property, and the said *Richardson* is not to pay any of said debts. Should the said *Van Horn* elect to sell to the said *Richardson*, or his assigns, then said *Richardson* is to pay him in the same manner, and do in all things as the said *Van Horn* is to do to and by the said *Richardson* in case he should buy his interest as aforesaid. The

party selling shall make a good and sufficient warranty deed of his half or interest in the said mill property, on demand after the first day of April next; and shall, immediately after the making of the deed of sale and the taking of the mortgage, put the party buying in quiet and peaceable possession of said mill property, and all things belonging thereto." *Van Horn* elected to sell his interest to *Richardson*, who became the purchaser, and paid the sum of $1,600 agreed upon; and, in April, 1850, *Van Horn* and wife, assuming and undertaking to carry out said agreement, executed to *Richardson* a deed, in which the property was described thus: "The undivided half of the reservation for hydraulic purposes in the plat of the village of Clinton, town of Christiana, * * * supposed to contain about thirty-three acres of land * * * (with the exception of what has formerly been deeded hereof to Winard Digman), * * * and also all that part of lot number 2, in block number 74, in said plat, that lies south of the road," etc.

Immediately after the execution of this deed, *Richardson* was put by *Van Horn* into peaceable possession of the whole of said mill property, and remained so in possession until the commencement of this suit. One *Turner* unites with *Van Horn* in this action, claiming an undivided half interest in lots 1 and 2, block 74, under a conveyance from *Van Horn* made in 1866; and one *Johnson*, who was a tenant under *Richardson*, is made co-defendant with him; and the plaintiffs claim to be owners and entitled to the possession of the whole of said lots 1 and 2 ("except a small piece, about one rod of land, on the southeast end of said lot 2, heretofore conveyed by *Van Horn* to *Richardson*"), and allege that defendants unlawfully withhold the possession. The answer denies that defendants are in possession of any part of said lots except those parts belonging to said "mill property," sets forth the contract and deed above described, and alleges that *Richardson* accepted

said deed supposing it to include and convey all of said premises, but that, by the mutual mistake of the parties to said deed, it did not include any portion of said lot 1, and did not "necessarily include" all that portion of said lot 2 which was occupied by said mill and necessary to its free use and enjoyment. The answer therefore prays that *Van Horn's* deed to *Richardson* may be so reformed as to describe and convey all the "mill property" in accordance with said contract.

The court found that all those parts of lots 1 and 2 claimed and occupied by the defendants were a part of the "mill property" in February, 1850, and decreed that *Richardson* was in equity the owner thereof, and was entitled in equity to a deed of conveyance thereof from the plaintiffs, and that the judgment should operate as such a conveyance, etc. From this judgment the defendants appealed.

*Geo. B. Smith*, for appellants, contended that, by the terms of the contract, it was only the property owned in common by the parties, which the one who should sell bound himself to convey to the one who should purchase.

*Spooner & Lamb*, for respondents.

COLE, J. The property which the parties agreed to sell and buy is described in the contract as the "mill property." *Richardson* agreed to sell to *Van Horn*, or to his assigns, "all his [*Richardson's*] right, interest and demand to the property known as the mill property in Christiana, now owned and occupied as common and undivided by the said parties." In the event that *Van Horn* should elect to sell, then we think it very clear that he was to sell and convey all of his interest in the same property. For, by another clause in the contract, it was stipulated and agreed that "the party selling shall make a good and sufficient warranty deed of his half or interest in the said mill property." These clauses in the contract satisfactorily show that the main subject-

matter of the sale and purchase was "the mill property," which the parties at the time "owned and occupied as common and undivided" for mill purposes. This, it appears to us, is the plain, obvious interpretation of the contract, and that, by virtue of its stipulations, the bargainee became entitled to a good deed of the bargainor's half of the property, described as the "mill property," whatever it was.

What, then, must be deemed to have passed by these words, "the mill property?" The counsel for the respondents claims and insists, that, by the force of this language, the soil on which the mill stands, and adjacent thereto, necessary for its use, and actually used with the mill, passes to the bargainee; and that the language likewise includes the flood-gates, dam, flume and other things annexed to the freehold and necessary for its beneficial enjoyment. This position is fully sustained by very many adjudged cases upon the subject of such grants, and is founded on reason and principle. For it is manifest that if a part of the land covered by the dam, race and flumes is excluded from the subject-matter of the contract, "the mill property" is incomplete and insufficient for any beneficial use. We have, therefore, no doubt that the parties intended, by the general description in the contract, to embrace whatever land was essential to the use of "the mill property," and had actually been used with it at the time the agreement was entered into. It appears that "the mill property," as now claimed and occupied by the defendants, covers the same ground, and only the same, that it did when the sale was made, with the exception of the "new part," which is upon no part of lots one and two. And, as this was no more than was embraced in the contract, and passed by the general description of "the mill property," the circuit court was fully warranted in finding that the defendant *Richardson* was entitled to a conveyance of all that portion of lots one and two which formed a part of "the mill

property" at the date of the agreement. It appears that the deed made by *Van Horn*, in the execution of the contract, described the property therein conveyed as "the undivided half of the reservation for hydraulic purposes, in the plat of the village of Clinton" (excepting what had been formerly deeded to Dingman), together with that part of lot two which lay south of the road. Precisely what is included in the "reservation for hydraulic purposes," it is not easy to determine from the plat annexed to the bill of exceptions. It is claimed, however, by the counsel for the plaintiffs, that the "reservation" embraced no part of lots one and two, while it is very apparent that a portion of those lots is used and occupied for the purposes of the mill, dam and flumes, etc. The deed, then, doubtless through some mistake in drawing it, fails to convey all the land which the plaintiff *Van Horn* agreed to convey. And a clear case is presented for the equitable interference of the court to compel a specific execution of a contract clear and unambiguous in its terms.

In opposition to this view, it is claimed that *Van Horn* agreed to convey an undivided half of "the mill property," *which he and Richardson jointly owned*, and no more ; and that since the title to lots one and two was in *Van Horn* at the date of the agreement, it cannot be assumed that he agreed to sell any portion of them. But, manifestly, he did agree to sell all his right and interest in "the mill property," and to convey the same by a good and sufficient deed ; and this imposes upon him the duty of conveying so much land as was actually used with the mill at the date of the agreement, and as is essential to its beneficial enjoyment.

It follows, from these views, that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.